Samuel KWESKIN, Plaintiff-Appellant,

v.

Jay L. FINKELSTEIN, Defendant-Appellee.

No. 11624.

United States Court of Appeals Seventh Circuit.

May 4, 1956.

Leo J. Spivack, Thomas Masuda, Chicago, Ill., for appellant.

Harry H. Krinsky, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

DUFFY, Chief Judge.

This action was brought to recover treble damages pursuant to Section 205 of the Housing and Rent Act of 1947 as amended, 50 U.S.C.A. Appendix, §§ 1881 et seq., 1895. Plaintiff, a tenant, charged defendant, a landlord, with demanding and receiving a bonus of $1,000.00 as a condition to renting to plaintiff a certain apartment in the city of Chicago.

This case is here for a second time. In our previous decision we said, 223 F.2d 677, 679: "We are unable, after reading the record, to understand why the trial court concluded plaintiff did not prove the material allegations of his complaint, unless the court concluded, for some reason not apparent to us, that plaintiff and the witnesses who appeared in his behalf, were not worthy of belief. Without adequate findings, we are left in the dark." We, therefore, remanded the cause with instructions to the trial court to make specific findings with reference to the material issues.

Less than a week from the date of our decision, the trial court made additional findings of fact and conclusions of law, and again entered judgment for the defendant. However, on motion of the plaintiff, these findings, conclusions and the judgment were set aside, because the trial court had acted prior to the time that the mandate of this Court had been issued. After our mandate was received, the trial court again made findings more detailed than had been previously entered, and again entered judgment for the defendant.

Defendant was the beneficial owner of a certain apartment building in Chicago, which building and apartments were subject to the provisions of the Housing and Rent Act. For some time previous to March, 1952, one Deemar had been a tenant in defendant's apartment 5-A. Desiring to terminate the tenancy and sell his furniture, Deemar contacted the defendant, the result of which was that $1,000.00 was later paid to the defendant. Defendant testified that he had forty or fifty prospects or applicants for the

apartment, but that he agreed to accept that person as a tenant who agreed to purchase Deemar's furniture.

The Court found in part: Defendant agreed to permit Deemar to sublet the apartment and to sell his furniture to a prospective tenant provided Deemar would pay him (defendant) the sum of $1,000.00; that plaintiff gave the sum of $1,000.00 to his father-in-law who turned the money over to Deemar; that defendant received the $1,000.00 from Deemar for his consent to the sale of Deemar's furniture to a new tenant (Kweskin) willing to buy the same, and who would meet his approval as a tenant. The Court stated that it did not approve of the defendant's sharp practice in demanding and obtaining the $1,000.00 from Deemar, but concluded that the defendant's testimony concerning this transaction was truthful, and pointed out that Deemar and Kweskin evinced a strong hostility toward the defendant. The Court concluded that the "sharp practice" of defendant was not a violation of the Housing and Rent Act of 1947 as amended.

Having in mind the provision of Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A., that findings of fact shall not be set aside unless clearly erroneous, we examine first the testimony of defendant Finkelstein. He testified: "He (Deemar) asked me if I would permit him to sell the furniture and I said to him that if he wanted to sell it I wanted $1,000.00 * * *." At this point it should be noted that Deemar did not need any permission from Finkelstein in order to sell his furniture. True, Deemar could probably obtain a higher price for the furniture if he could sell it to the tenant who would next occupy Apartment 5-A, but it was Finkelstein who had the sole authority to say who that next tenant would be. He had no doubt that he could readily rent that apartment for housing facilities were scarce, and Finkelstein testified forty or fifty prospects or applicants were clamoring for apartments in his building.

On cross-examination defendant was asked: "Q. You gave him permission to sublease the apartment for $1,000.00, is that correct?" And the answer was "Yes." Later, when plaintiff found it necessary to move from the apartment he requested permission of defendant to sell his furniture. The following questions were asked and answers given:

"Q. Did you give him (plaintiff) your permission to sublet the apartment or get a new tenant that would be acceptable to you? A. Right.

"Q. Did you ask for any consideration for that permission? A. Yes.

"Q. And how much did you ask?" A. $500.00."

Deemar obtained approval from the office of the Federal Housing Administrator to sell his furniture located in Apartment 5-A for a maximum price of $1,500.00. It is not disputed that before plaintiff was permitted to move into Apartment 5-A he paid a total of $2,500.00, and that $1,500.00 thereof was for the purchase of Deemar's furniture. There is no dispute that the balance of plaintiff's payment amounting to $1,000.00 went to the defendant who had no ownership interest in the furniture. The Court's findings traced the conduit through which the extra $1,000.00 passed from plaintiff to defendant. The Court found that plaintiff gave the money to his father-in-law who gave it to Deemar who gave it to the defendant.

The findings of the Court that defendant never received the $1,000.00 bonus from plaintiff is contrary to the findings in which he traced the $1,000.00, unless it was intended to show that the money did not pass directly from plaintiff to defendant. However, no one who testified in this case at any time contended that it did.

Defendant was in a position to demand payments of $1,000.00 in one case and $500.00 in another only because he was the owner of apartments, and at the same time there existed a shortage in housing accommodations. His demand for the payment of $1,000.00 before he would approve plaintiff as a tenant for

Apartment 5-A was more than sharp practice. In our opinion, it was a violation of the Housing and Rent Act of 1947 as amended.

The case at bar is stronger for the plaintiff than in Burton v. Katzman, 7 Cir., 187 F.2d 703, wherein this Court held there had been a violation of the Housing and Rent Act. There King was the beneficial owner of an apartment building. Katzman occupied an apartment in the building. Katzman advertised his apartment for rent and his furniture therein for sale. Katzman was the sole owner of the furniture. King knew when she approved the lease to the plaintiff in that case that he had been required to purchase the furniture in order to obtain the housing accommodations. All of plaintiff's dealings were with Katzman. The payment of the first month's rent was made to Katzman and thereafter to King, the landlord. In spite of the fact that there was no proof that King profited by the transaction, this Court approved the judgment holding her liable. As a reason why she should be liable we stated, at page 705: "Particularly is this so in view of her knowledge that he was selling the furniture in connection with such rentals. Furthermore, she ratified the acts of her agent in selling the furniture as a condition to the renting of the apartments by accepting rent from such tenants * * *."

Here, as in the Burton case, the landlord acted through a third party who actually owned the furniture. Here the landlord admitted profiting to the extent of $1,000.00 while in the Burton case there was no proof of any profit going to the landlord.

We hold that on the uncontradicted evidence and on the admissions of the defendant, the plaintiff is entitled to judgment. Furthermore, under the Housing and Rent Act applicable at the time when defendant received the $1,000.00, an award of treble damages was mandatory, plus reasonable attorney fees, unless the defendant affirmatively proved that the violation was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation. It is obvious that the defendant made no such proof.

Judgment is reversed and remanded with directions that judgment be entered in favor of the plaintiff for treble the overcharge of $1,000.00 plus reasonable attorney fees and costs.

Reversed and remanded.