**PATRICIAN TOWERS OWNERS, INC., a Delaware Corporation, et al., Appellees,**

v.

**Charles M. FAIRCHILD (Individually and as general partner, Patrician Towers limited partnership), Appellant.**

No. 73–2182.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1975.

Decided March 26, 1975.

Fred C. Alexander, Jr., Alexandria, Va. (Boothe, Prichard & Dudley, Alexandria, Va., on brief), for appellant.

Henry J. Cappello, Washington, D. C. (Rothwell, Cappello & Berndtson, Washington, D. C., on brief), for appellees.

Before RUSSELL, FIELD and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

This is a suit on behalf of the owners of units in a condominium, constructed at Rehoboth Beach, Delaware, to recover costs of making allegedly necessary repairs to the condominium due to defects in the original construction as well as to recover assessments levied against the builder as the owner of certain unsold units.

Federal jurisdiction rests on diversity.

After a trial without a jury, the District Court granted judgment in favor of the plaintiffs and the defendant has appealed. We vacate the judgment and remand for more specific and detailed findings in conformity with Rule 52(a), Rules of Civil Procedure, 28 U.S.C.

The initial issue is the threshold one of jurisdiction and standing. An understanding of this issue requires some elaboration of the facts.

The condominium, which is the subject of this controversy, began initially as a project of a partnership composed of the defendant Fairchild and another. A few months after construction had commenced but not before the partnership had entered into a number of sales contracts with prospective unit owners with a warranty of "the building and the mechanical equipment therein for a period of one year from completion," the partnership secured a charter for a Delaware corporation, Patrician Towers, Inc. All the stock in the corporation was owned by the partnership. The condominium property was thereupon transferred to the corporation and the building of the condominium proceeded in the name of the corporation as owner. When the corporation thereafter executed sales contracts, it, unlike the partnership, included therein no express warranty.

At some point during the construction, the defendant Fairchild purchased the interests of his co-partner and became the sole general partner in the partnership and the owner of all the stock in the corporation Patrician Towers, Inc.

The purchasers of units in the condominium early constituted themselves an unincorporated association under the authority of the Delaware Unit Property Act,[1] and, as provided in that Act, elected a Council with the powers defined in the Act. The members of this Council, which might under Delaware law number from 3 to 5, were required to be either citizens of Delaware or unit owners.[2] The Council was authorized and empowered in the name of the Association and for its benefit to maintain, repair or replace the common areas or "elements" of the condominium, to assess and collect from the unit owners all common expenses, and to pay all common expenses and obligations.[3] For these purposes, it was constituted a legal entity, authorized under the Act to sue for and on behalf of the unit owners to recover for any assessments made or obligations undertaken.[4]

When construction of the condominium was completed in 1970 and the unit owners entered into possession of their respective units, a number of complaints quickly developed because of leaks throughout the building. After the defendant failed to correct the alleged defects, the Council retained counsel, and through such counsel, notified the defendant that unless the alleged defects in the building were corrected, it would proceed "to have the defects corrected and would look to defendant for reimbursement." The plaintiffs claimed the builder failed to correct the defects as requested. By reason of the builder's failure, the Council claims it was forced to contract for the correction of the "defects in the buildings" and in so doing

---

1. § 2201 et seq., Title 25, Delaware Laws.

2. 25 Del.Laws, § 2202(5).

3. 25 Del.Laws, § 2211.

4. 25 Del.Laws, § 2234.

incurred expenses in discharging what was alleged to have been a breach of the builder's obligation to construct the condominium in "a good workmanlike manner * * * suitable for human habitation."

This suit was instituted to recover the expenses incurred by the Council, in making the repairs to the common areas of the condominium. In addition, recovery was sought for the assessments made by the Council against defendant, as owner of six units which had been retained by the defendant, for its pro rata share of common operating expenses. Though filed to recover items which were thus clearly recoverable by the Council, the action named three plaintiffs and recovery was sought jointly on their behalf.[5] One of these plaintiffs was the Council of the Patrician Towers Condominium Association, described in the complaint as an "unincorporated association." Another was a Delaware corporation formed by the Council, to which it had assigned its right and title in the "real property" and its "rights and duties * * * to manage the condominium property." The third plaintiff consisted of two individuals, one a citizen of the District of Columbia and the other a citizen of Maryland, who identified themselves as "members of the Council [Association] and, as such, [could] fairly and adequately protect the interests of the Association and its members," in maintaining this action "under provisions of Rule 23.2 Federal Rules of Civil Procedure" "individually in their own right as representatives of the class of property owners in Patrician Towers Condominium."

The defendant, named in the complaint, is alleged to be a citizen of Virginia.[6] In his answer to the suit, the defendant expressly denied among other allegations, the allegations of federal jurisdiction, stating explicitly that there was an absence of diversity between the members of the plaintiff Association (Council) and the defendant. He, also, challenged the standing of the representative plaintiffs as a party plaintiff. The answer made a somewhat ambiguous reference in its assault on the jurisdiction to the status of the corporate plaintiff, which was alleged to be an assignee of the Council. Both the plaintiffs and the defendant have disregarded this plaintiff in their discussion of the issue and in the present posture of the case we do so, too, though it may be necessary on remand to consider its status for jurisdictional purposes.[7]

With the issues as made by the answer of the defendant, the representative plaintiffs were placed under the burden of establishing their standing to maintain the action under Rule 23.2.[8] In ad-

---

**5.** The defendant argues that the plaintiffs seek recovery also for damages due to leakage sustained by the individual unit owners in their separate units. The plaintiffs deny any such intention and assert that their claims relate exclusively to damage to common areas of the condominium, in which all unit owners have an indivisible common interest. A hasty review of the record suggests that the plaintiffs are correct. It seems that all the bills for which recovery is sought have to do with the common areas. There is, however, some language in the amended complaint which would give support to the argument that recovery for damage to the individual units is sought. In any event, on remand the District Court might well clarify this issue and make clear whether any claims for damages other than the common areas are pressed.

If the plaintiffs should be found to be advancing claims for damages to individual units, it would be necessary in ascertaining whether or not such claims meet the test of the jurisdictional amount to consider them in the light of Snyder v. Harris (1969) 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 and Zahn v. International Paper Co. (1973) 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511.

**6.** This is actually an amended complaint. The first complaint, we were told in argument, named the corporation formed by the defendant and his co-partner as a co-defendant but the corporation was dropped to avoid dismissal on jurisdictional grounds.

**7.** *Cf.* Kramer v. Caribbean Mills, Inc. (1969) 394 U.S. 823, 829–830, 89 S.Ct. 1487, 23 L.Ed.2d 9; Ferrara v. Philadelphia Laboratories, Inc. (D.C.Vt.1967) 272 F.Supp. 1000, 1014–1015, aff. 393 F.2d 934.

**8.** Cook County College Teachers U., Loc. 1600, A.F.T. v. Byrd (7th Cir. 1972) 456 F.2d 882, 885, cert. denied 409 U.S. 848, 93 S.Ct. 56, 34

dition, the Council representing the Association and dependent on whether it was found to have standing, the representative plaintiffs, in turn, had the burden of establishing diversity of citizenship between them, on the one hand, and the defendant, on the other.[9] And, in resolving after trial the material issues of jurisdiction and standing thus made by the pleadings, the District Court was obligated under Rule 52(a) to set forth in this nonjury case its decision in the form of detailed findings of fact and conclusions of law.[10] In the normal course of the proceedings, such findings and conclusions should have preceded any decision on the substantive merits of the case.

In their proposed findings of fact and conclusions of law, counsel for the plaintiffs, and the District Court in its original findings and conclusions, however, made no reference whatsoever to the material issues of standing and jurisdiction but dealt exclusively with the substantive merits of the case. It was only after the defendant moved for a "New Trial and to Amend or Alter the Judgment" given, that the District Court took any note of the challenge either to standing or jurisdiction. In dismissing that motion, the Court did state as to standing:

"The arguments relative to the standing of the plaintiffs are answered

by reference to Rule 23.2, F.R.Civ.P., the Court finding that the named individual plaintiffs will fairly and adequately protect the interests of the plaintiff association and its members. While there may be some uncertainty, as among the plaintiffs, which plaintiff is entitled to the award in this case, collectively the plaintiffs comprise all the entities which could have an interest in that award."

This statement is, however, no more than a bare conclusory finding in the language of the Rule itself. Expressed in absolute terms, it is predicated on no articulated subsidiary findings or reasoning. In their complaint the plaintiffs seemingly would have justified a finding that the representative plaintiffs could "fairly and adequately protect the interests of the plaintiff association and its members" under Rule 23.2—the conclusory finding made by the District Court—on the fact that the representative plaintiffs were members of the Council. But the trial court did not allude to this circumstance in its conclusory declaration and we have no reason to assume that such fact influenced in any way the conclusion reached by the District Court. Perhaps, but this is only conjecture, the District Court was prompted to disregard this fact because of evidence in the record contradictory of the allegation that both representa-

---

L.Ed.2d 90, reh. denied 414 U.S. 883, 94 S.Ct. 29, 38 L.Ed.2d 131.

9. McNutt v. General Motors Acceptance Corp. (1936) 298 U.S. 178, 190, 56 S.Ct. 780, 80 L.Ed. 1135.

10. Mosley v. United States (4th Cir. 1974) 499 F.2d 1361, 1363; Servo Corporation of America v. General Electric Company (4th Cir. 1968) 393 F.2d 551, 556. It is true that, as the Court said in Commissioner v. Duberstein (1960) 363 U.S. 278, 292, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218, "conciseness is to be strived for, and prolixity avoided, in findings;" they must be stated "in such detail and exactness" on all material issues that the reviewing court may understand clearly the factual basis for the trial court's findings and conclusions. See, Kelley v. Everglades District (1943) 319 U.S. 415, 420, 63 S.Ct. 1141, 87 L.Ed. 1485, reh. denied 320 U.S. 214, 63 S.Ct. 1444, 87 L.Ed. 1851.

In short, " '[T]here must be such subsidiary findings of fact as will support the ultimate conclusion reached by the court. * * *' " Kweskin v. Finkelstein (7th Cir. 1955) 223 F.2d 677, 678–9, rev. on other grounds 232 F.2d 801.

For an excellent statement of the purposes of the Rule, see Lemelson v. Kellogg Company (2d Cir. 1971) 440 F.2d 986, 988:

" * * * The requirement embodied in that Rule serves many masters. It aids 'the appellate court by affording it a clear understanding of the ground or basis of the decision of the trial court,' Barron & Holtzoff, Federal Practice and Procedure, § 1121 (Wright Revision 1961), see Fuchstadt v. United States, 434 F.2d 367 (2 Cir. 1970); it makes definite what was decided by the case, Wright, Federal Courts (1963) § 96; and it serves to evoke 'care on the part of the trial judge in ascertaining the facts.' "

tive plaintiffs were members of the Council. The representative plaintiff Bucher was not a resident of Delaware and, if the exhibit included in the agreed appendix is correct, his wife, and not he, was the owner of unit 106. He was accordingly not qualified to be a member of the Council. But the District Court neither relied on the alleged membership of the representative parties in the Council nor on any other stated facts in support of its finding of standing.

Beyond the absence of any factual statement in support of its finding of standing is the failure of the District Court to express the legal basis for its conclusion. It will be observed that, in its opinion, the District Court refers to the representative plaintiffs as constituting proper representatives to protect the *"plaintiff association* and its members." (Italics added) It thus recognizes that the unincorporated association through its elected Council is a party plaintiff, capable of suing on behalf of its members; in fact, it is the jural entity declared entitled under Delaware law to maintain this cause of action. But if the association is a proper party plaintiff entitled to recover for expenses *it has incurred* from the defendant, the conclusion of the District Court is contradictory of the construction of Rule 23.2, as phrased in Suchem, Inc. v. Central Aguirre Sugar Co. (D.C.Puerto Rico, 1971) 52 F.R.D. 348, 355, which would deny class representation under Rule 23.2 on behalf of any unincorporated association if the association is legally empowered to sue on its own behalf. In *Suchem* the Court declared that:

" * * * when the law of the state in a particular case does not provide an unincorporated association with capacity as a jural person to sue or to be sued, then and *only* then does the mechanism of Rule 23.2 come into operation and is available as a way of overcoming this lack of capacity by suing the individual representatives of the unincorporated association."

It is true that the construction of Rule 23.2, as declared in *Suchem,* has been viewed with some skepticism by both *Moore*[11] and *Wright and Miller,*[12] but it finds strong support in the Advisory Committee's notes.[13] But whether *Suchem* be considered a correct construction of Rule 23.2 or not is not determinative of standing in favor of the representative plaintiffs. We manifestly have a situation that, it is fair to conclude, was never contemplated or intended in the application of Rule 23.2. That Rule was intended to provide, if we accept the reasoning of *Suchem,* as a practically automatic device whereby an unincorporated association, unable by state law to sue as a jural entity, might sue by means of a class action, thereby both avoiding the difficulties created by *Bouligny*[14] and the more stringent requirements of Rule 23 for a class action, or, on the other hand, if we take the broader construction suggested in *Wright and Miller* and *Moore,* as a readily available substitute for an action by the unincorporated association satisfying the established requirements of Rule 23 for qualification as a class action.

Under neither construction, however, could it be argued that the representa-

11. 3B Moore, Federal Practice, 1974 Supp., p. 145.

12. 7A Wright and Miller, Federal Practice and Procedure, § 1861, pp. 459–60 (1972).

This text states the purpose of Rule 23.2 as "a procedural device that provides a supplementary method for unincorporated associations to litigate in a federal court * * *."

13. *See* Note, 14 A.L.R.Fed. 849, at p. 854:

" * * * Indeed, the notes of the Advisory Committee on the 1966 amendments to the Federal Rules of Procedure following 23.2 (which was added in 1966) point out that

although an action by or against representatives of the membership of an unincorporated association has often been viewed as a class action, the real or main purpose of this characterization has been to give 'entity treatment' to the association, when, for formal reasons, it could not sue or be sued as a jural person under Rule 17(b), which restricts the capacity of unincorporated associations, when suing or being sued, to the capacity given them by the law of the state where the District Court is held."

14. Steelworkers v. Bouligny, Inc. (1965) 382 U.S. 145, 149–53, 86 S.Ct. 272, 15 L.Ed.2d 217.

tive plaintiffs here have standing. As we have seen, *Suchem* would clearly preclude Rule 23.2 as a basis for class standing in this case. But the contrary broader construction of the Rule would be no more availing as a basis for investing the representative plaintiffs with standing under Rule 23.2. And this latter statement is so because the representative plaintiffs are not suing as plaintiffs by way of a substitute for or in lieu of an action by the unincorporated association itself; they are suing along with— jointly with—the unincorporated association itself, for whose benefit the action is prosecuted, to recover on a single, identical cause of action for obligations incurred by the unincorporated association itself acting through its jural entity, the Council. In short, we are confronted here with the question whether in a single cause of action a representative action is maintainable under Rule 23.2 when joined (and joined voluntarily by the plaintiffs themselves) with an action brought by the party for whose benefit the representative action is sought to be asserted. Coniglio v. Highwood Services, Inc. (D.C.N.Y.1972) 60 F.R.D. 359, 364, aff. 495 F.2d 1286, though involving a situation where the unincorporated association and the class representatives under Rule 23.2 were defendants rather than plaintiffs, indicates that the class action is not maintainable under such circumstances. It is obvious that the right of the representative plaintiffs to sue for the benefit of the unincorporated association under 23.2 has considerable similarity to a class derivative suit. A derivative action would ordinarily not be maintainable if the real party's interest, the corporate principal, for instance, had brought suit in its own name. Why should there be a different rule where, under largely similar circumstances, a class action under 23.2 is pressed on behalf of an unincorporated association if the very entity the class representative is seeking to represent (*i. e.,* the unincor-

porated association) is itself a party, asserting in good faith the very same claim that the class representative is asserting? We apprehend none in principle.

■ It follows that we have neither factual findings nor legal reasoning to support the District Court's finding of standing. Rule 52(a), as we have observed, demands that the District Court set forth its factual and legal basis for its final conclusion on standing in such detail that the appellate court may understand the basis for the District Court's conclusion. The single conclusory sentence in the order dismissing defendant's motion for a new trial will manifestly not satisfy the mandates of the Rule. It provides this Court with mere conjectures as to the reasoning, both factually and legally, used by the District Court in reaching its conclusion. The cause must be remanded for more specific and detailed findings and conclusions on the issue of standing.

■ Even if the findings and conclusions on standing could be approved as meeting the requirement of Rule 52(a), we could not affirm the judgment below on the record now before us or find compliance on the part of the District Court with Rule 52(a). There is no ruling of any kind on the defendant's denial of jurisdiction and this issue remains, whether the representative parties have standing or not. If, for instance, the representative plaintiffs have standing, that would mean simply that the citizenship of those representatives would be considered for diversity purposes.[15] But this would by no means be tantamount to a decision, even by implication, that there was diversity jurisdiction in this case. The representative plaintiffs are not the sole plaintiff and their citizenship is not the only one to be considered in determining whether there is diversity between the plaintiffs and the defend-

---

**15.** Calagaz v. Calhoun (5th Cir. 1962) 309 F.2d 248, 251–53; Boesenberg v. Chicago Title & Trust Co. (7th Cir. 1942) 128 F.2d 245, 246, 141 A.L.R. 565; McGarry v. Lentz (D.C.Ohio 1925) 9 F.2d 680, 683, aff. 13 F.2d 51, cert. denied 273 U.S. 716, 47 S.Ct. 108, 71 L.Ed. 855.

ant. These representative plaintiffs have voluntarily chosen to join as party plaintiff with them the unincorporated association itself. They have thus vouched for the standing of the unincorporated association as a proper joint plaintiff with them. And the District Court has itself recognized the propriety of the appearance of the Association as a party plaintiff. The judgment it granted runs in favor of the Association as well as the representative plaintiffs. Even when it made its finding of standing in favor of the representative plaintiffs, it recognized and denominated the Association as a party plaintiff. In this state of the record the unincorporated association must be considered a proper party plaintiff in this action; and the citizenship of the members of that unincorporated association must be considered on the issue of diversity jurisdiction,[16] or some valid reasoning, predicated on adequate findings of fact, must be given for disregarding them and their citizenship. The opinion below offers no justification for so disregarding the unincorporated association as a party plaintiff in ascertaining jurisdiction.

Normally, the absence of any finding that would warrant disregarding the Association as a plaintiff might be ground for dismissing the action on jurisdictional grounds, provided it is conceded that there is not complete diversity between all the members of the Association and the defendant. We prefer, however, to remand in order that the District Court may make specific and detailed findings on jurisdiction and standing, with the right on the part of any of the parties to offer any additional testimony deemed relevant by the trial court and with the right on the part of the District Court to enter any other and further orders as justice may demand.

We have foregone any discussion of the merits of the controversy, regarding their consideration premature until the issues of standing and jurisdiction are resolved.

Remanded with directions.

---

16. Steelworkers v. Bouligny, Inc., *supra*, at p.153, 86 S.Ct. 272.