**TIDEWATER EQUIPMENT CO., INC., Appellant,**

v.

**RELIANCE INSURANCE COMPANY, Appellee.**

No. 80–1568.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 4, 1981.

Decided June 4, 1981.

---

**3.** *Spielberg Manufacturing Co.*, 112 NLRB 1080 (1955).

**4.** *Bancroft Whitney Co.*, 214 NLRB 57 (1974); *Radioear Corp.*, 199 NLRB 1161 (1974).

Peter F. Axelrad, Baltimore, Md. (Mary K. Farmer, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief), for appellant.

Edgar H. Gans, Baltimore, Md. (Carl F. Ameringer, Niles, Barton & Wilmer, Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BUTZNER, Circuit Judge, and WILLIAMS, District Judge.*

* The Hon. Richard L. Williams, United States District Judge for the Eastern District of Virginia, sitting by designation.

RICHARD L. WILLIAMS, District Judge.

Tidewater Equipment Co., Inc. brought this action in the United States District Court for the District of Maryland against Reliance Insurance Company for breach of an insurance contract. The District Judge, sitting without a jury, found against Tidewater and entered judgment for Reliance after filing formal findings of fact and conclusions of law. Tidewater has appealed the judgment.

## I. FACTS

Tidewater is a Maryland corporation which is in the business of leasing cranes. On September 30, 1977, Tidewater leased what was then the largest model crane in the world to Keystone Steel Construction Co., a New Jersey corporation. As part of the lease agreement, Keystone was required to insure the crane, which it endeavored to do by calling its carrier, Reliance, to request that Tidewater's crane be listed on its policy with Tidewater named as an additional insured. Reliance added Tidewater as an insured under the Keystone policy and mailed a certificate to this effect to Tidewater. When a representative of Tidewater noticed that the certificate had an incorrect serial number and did not specifically list the boom as part of the policy, it was brought to the attention of Keystone, which had a second certificate issued and sent to Tidewater.

Both certificates contained language which indicated that the certificates were subject to the terms of the Keystone policy.

On September 26, 1977, while the crane was being operated by Keystone personnel, it turned over and sustained extensive damage. After inspection by representatives of Keystone, Tidewater and Reliance, the crane was shipped to C.C. & F.F. Keesler Inc. for repair. Because of the size of the crane and the extensive damage, Keesler was unable to repair it, and it was shipped to the Harnischfeger Corporation in Teter-

boro, New Jersey. Harnischfeger manufactured the crane.

While under repair, a dispute arose as to whether or not the slewing gear needed to be replaced or whether repairing it would suffice. The slewing gear is the part of the crane through which the upper construction is connected to the truck carrier. It allows the upper structure to rotate 360 degrees and retains and resists the forces applied through the upper machinery and the load from the boom and hook. One of the teeth in the gear was broken in the accident.

Harnischfeger representatives believed the entire gear assembly had to be replaced and would only warrant the repairs if that was done. They told Tidewater of this opinion, but before they did so, Reliance advised Harnischfeger that it had concluded that repair of the broken tooth was all that was required. Reliance had received an estimate that repair would cost $5,000.

Tidewater, in the meantime, had been informed that its own insurance carrier would not insure the crane unless it met factory specifications. Despite the fact that it had previously left the repair of the crane to Reliance, Tidewater ordered Harnischfeger to replace the slewing gear assembly. The cost of doing so was $42,930. This was done without consulting Reliance.

When the repair bills were submitted to Reliance, it paid a total of $105,000 but refused to pay a deductible of $25,000, a ten percent betterment figure of $12,282.49 and the difference of $37,930 between the cost of replacing the slewing gear and the $5,000 estimate for repairing the tooth. Tidewater brought this suit for those amounts plus interest and $1,195.56 in miscellaneous charges. Jurisdiction was based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

## II. ISSUES ON APPEAL

On appeal, Tidewater claims that the district judge erred in the following ways: (1) by holding that Reliance was not liable to Tidewater for the deductible and betterment figures; (2) by holding that Reliance was not liable for the replacement cost of the slewing gear; (3) that the judge's findings of fact and conclusions of law were insufficient to comply with Rule 52(a), Fed. R.Civ.P.; and (4) that the court erred in failing to enter judgment for Tidewater in the amount sued for.

## III. THE DEDUCTIBLE AND BETTERMENT FIGURES

Tidewater claims the district judge erred by holding that Reliance was not liable for the deductible amount and the betterment figure, and the miscellaneous charges. We affirm the district judge's conclusion on this issue.

The district judge found, and we agree, that Tidewater's only contract was with Keystone. Tidewater leased the crane to Keystone and, as part of that contract, Keystone was obligated to provide insurance for the equipment. It did so by asking its carrier, Reliance, to list Tidewater as an insured on the Keystone policy. As a result of this request, Reliance mailed the certificates to Tidewater.

William Bozman, Tidewater's executive vice-president, received the first certificate and contacted Keystone because the serial number of the crane had been left off of the certificate. He also attempted to determine from Keystone whether the policy contained full coverage for both the crane and the boom in the amount of $675,000. He made this inquiry, according to his testimony, because from past experience he knew that the term "All Risks"—the term which was used on the certificate to describe the type of insurance provided—did not necessarily mean there was no deductible and that no exclusions could be claimed. A new certificate was sent—at Keystone's request of Reliance—which listed coverage for the boom and corrected the serial number.

At no time before the accident did anyone from Tidewater communicate with representatives of Reliance.

From these facts it is clear that Tidewater contracted with Keystone for in-

surance, and to fulfill its obligation; Keystone had Reliance list Tidewater as an insured. To the extent that Keystone failed to insure the crane, it became the insurer.[1] 4 Appleman, Insurance Law and Practice § 2261 at 179 (Rev. Ed. 1969). *See also, Midwest Lumber Co. v. Dwight E. Nelson Constr. Co.*, 188 Neb. 308, 196 N.W.2d 377 (1972); *Smith v. Ryan*, 142 So.2d 139 (Fla.App.1962).

■ Tidewater's right against Reliance is as an additional insured under the insurance contract between Keystone and Reliance, and as such is limited by the terms and conditions of that contract. See 12 Couch on Insurance 2d, § 45:307 at p. 321 (1964).

Tidewater, as the plaintiff, bore the burden of proving the contract, its terms, a breach, and its entitlement to recover. It failed to carry that burden. The written contract of insurance was never placed into evidence, but only the certificates. The certificate first issued said at the top that it was "subject to the provisions, conditions and limitations contained" in the policy with Keystone. The second certificate contained the following language: "This Certificate is issued as a matter of information only and confers no rights upon the certificate holder. This Certificate does not amend, extend or alter the coverage afforded by the policies listed below."

The only evidence of what the terms and conditions of the policy were came in the form of oral testimony from Robert Durbin, manager of Material Damage for Reliance, who testified that the amounts paid by Reliance for the damage to the crane were based on the policy terms. This being the only evidence, the trial judge had no choice but to rule that Tidewater had not borne the burden of proving that it was entitled to the amounts sued for.

■ Tidewater further claims that Reliance is estopped from denying Tidewater's right to the deductible, the betterment and

the miscellaneous figures since it never explicitly told Tidewater of those provisions in the policy. This argument must fail, however, because a necessary element of any estoppel is reliance by the party claiming the estoppel. *Travelers Indemnity Co. v. Rosedale Passenger Lines, Inc.*, 450 F.2d 975 (4th Cir. 1971); *General Cigar Co. v. Lancaster Leaf Tobacco Co.*, 323 F.Supp. 931 (D.Md.1971); *Chertkof v. Philadelphia, Baltimore & Washington R.R. Co.*, 254 Md. 557, 255 A.2d 14 (1969); *Savonis v. Burke*, 241 Md. 316, 216 A.2d 521 (1966).

> An estoppel cannot arise in the absence of proof that the party claiming the benefit thereof had relied on the statements or conduct claimed to give rise to the estoppel, the theory being that in the absence of such reliance, no harm will be caused by proving the truth.

Couch on Insurance 2d § 71.17 at p. 17 (1968).

■ Whether or not an estoppel arises in any case is ordinarily a question for the trier of fact to determine. *Addressograph-Multigraph Corp. v. Zink*, 273 Md. 277, 329 A.2d 28 (1974); *Travelers Indemnity Co. v. Nationwide Constr. Corp.*, 244 Md. 401, 224 A.2d 285 (1965); *Bean v. Steuart Petroleum Co.*, 244 Md. 459, 224 A.2d 295 (1966). The district judge made a factual finding that Tidewater had not relied upon the certificates for specifics of the coverage, but relied instead on representations from Keystone. This conclusion, from the record, is not "clearly erroneous." Rule 52(a), Fed.R. Civ.P. There having been no reliance, there can be no estoppel.

For these reasons, we affirm the district court on its judgment that the plaintiff is not entitled to the amounts which represent the deductible, the betterment and the miscellaneous figures.

## IV. REPLACEMENT v. REPAIR

Tidewater claims that the trial judge also erred in deciding that Reliance was not liable for the full cost of replacing the

---

1. Keystone was originally named as a defendant in this litigation but Tidewater settled with Keystone before the trial.

slewing gear, but only liable for the estimated amount of the repair of the broken tooth.

Both sides presented expert testimony to support their positions. Tidewater's expert, Raymond Melvin, was the director of Central Technical Services for the Harnischfeger Corporation, the manufacturer of the crane. He testified that repair of the slewing gear in question was within his responsibility as Chief Gear Engineer. In his job he has had to decide whether to replace or repair 13 slewing gears and in only one instance was a gear tooth repaired.

When contacted about the slewing gear involved in the present case his conclusion was that it had to be replaced, based, however, only on a description of the accident and the damage and not on a personal inspection. While admitting that he was aware of certain tests which could be performed to determine the extent of the damage, none was conducted. He also testified that he was unaware of what procedure could be used for repairing a broken tooth, but assumed any such procedure would be heat related and that use of heat would weaken the metal.

Reliance's expert, George Jackman, was the president of Metal Locking Services, Inc., which is in the business of repairing, among other things, gear teeth—although usually on smaller equipment. He testified that through a process known as "metal locking", which uses no heat, the gear could be repaired and the finished product would be as hard as the parent metal. As opposed to Melvin, Jackman personally inspected the broken tooth and estimated the cost of repair at $5,000.

When presented with this conflicting expert testimony, the judge, as trier of fact, had to make a choice of which was the most convincing. After reviewing the testimony the judge was convinced by Jackman since Melvin had assumed repair would require heat treatment while Jackman testified that his company could repair the ring without the use of heat. Furthermore, the judge appears to have been influenced by the fact that Jackman had personally inspected the damaged equipment while Melvin had not.

Tidewater urges this court to reverse the judgment of the trial court on the grounds that the judge was incorrect in crediting Jackman's testimony over Melvin's. Much of its brief is taken up with a recitation of the qualifications of the two experts, concluding that Melvin's credentials and Jackman's deficiencies compelled the court to completely discount Jackman's testimony.

We disagree. It is the function of the trial judge when sitting without a jury to make findings of fact which should not be set aside "unless clearly erroneous." Rule 52(a), Fed.R.Civ.P. It cannot be gainsaid that given the conflicting expert testimony in the present case, the trier of fact was forced to make a decision. Tidewater is in effect asking this court for a *de novo* determination, which is not the function of this court.

> The authority of the appellate court, when reviewing the findings of a judge as well as those of a jury, is circumscribed by the deference it must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. The question for the appellate court under Rule 52(a) is not whether it would have made the findings the trial court did, but whether "on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed."

*Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). *See also, Phillips v. Crown Central Petroleum Corp.,* 556 F.2d 702 (4th Cir. 1977).

This court is not left with such a firm conviction. The trial judge personally observed the two witnesses. His written findings of fact and conclusions of law discussed the merits of the two positions, taking into account the personal knowledge of each of the two experts of the pieces of equipment and each's knowledge of possible repair methods. Having done this, the judge chose Jackman's testimony as the most per-

suasive of the two. Having reviewed the entire record in this case it is our judgment that it would be highly inappropriate for this court to disturb this finding of the trial judge, his finding not being "clearly erroneous."

█ This conclusion, however, is not the end of the matter. While the trial judge's finding regarding the weight of the expert testimony is not clearly erroneous, his final conclusion that the defendant is not liable for the full cost of replacement of the slewing gear did not apparently consider all the relevant evidence.

Tidewater presented evidence that without full replacement of the slewing gear as opposed to the mere repair of the gear tooth, its insurance carrier, The Hartford Insurance Company, would not insure the crane. In a letter to William Bozman, Ralph E. Brown of R. B. Brown & Associates, Inc., Corporate Insurance Managers, wrote that Hartford "was unwilling to further insure this crane from either other physical damage to the crane or third party liability coverage which would result from the use and/or operation of the crane."

Only if the crane was repaired so that it met factory specifications would Hartford insure it. B. J. Karas, product service manager for Harnischfeger, wrote in a letter to Charles Enman of Harnischfeger that the company could not warrant a repair of the crane if only the gear tooth was repaired.

█ It is established in most jurisdictions, including Maryland, that when an insurance carrier elects to repair rather than replace an item on which it carries insurance, the company must see that the insured object is put back "in substantially the same condition as it was before the loss, and the repairs must make the property as serviceable as it was before the loss." *Interstate Ins. Co. v. Logan*, 205 Md. 583, 109 A.2d 904, 906 (1954). *See also,* Couch on Insurance 2d, § 54.30, p. 338 (1966).

When an insurer makes an election to repair or rebuild under a "repair, restore or rebuild clause" in its policy the insurer is then obligated to put the vehicle in substantially the same condition as it was prior to the collision so as to render it as valuable and as serviceable as before. *Venable v. Import Volkswagen*, 214 Kan. 43, 519 P.2d 667 (1974).

For a company which has invested in an apparently expensive crane of the size involved in this case, especially when any accident involving such a crane could conceivably cause serious personal injuries and possible loss of life, insurance is all important. Certainly such a piece of equipment is not "as valuable and as serviceable as before" if after repair it is uninsurable. We view this as an important element in any determination of whether or not an insurance company has fulfilled its duty when it elects to repair.

The trial judge, however, failed to consider this in his findings. Rule 52(a)[2] requires the trial judge to consider in his findings "all material issues [so] that the reviewing court may understand clearly the factual basis for the trial court's findings and conclusions." *Patrician Towers Owners, Inc. v. Fairchild*, 513 F.2d 216, 219 n. 10 (4th Cir. 1975). *See also, Kelley v. Everglades Drainage District*, 319 U.S. 415, 63 S.Ct. 1141, 87 L.Ed. 1485 (1943).

For this reason, we agree with Tidewater that the district court's findings of fact did not meet the standards of Rule 52, since they failed to address evidence which we believe is essential to a proper determination of the case.

Therefore, we vacate the judgment for the defendant and remand this case to the district court for further findings on the issue of insurability with leave to the parties to adduce further evidence if they desire to do so.

---

2. Rule 52(a), Fed.R.Civ.P., reads in part:

In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; ....

## V. CONCLUSION

In accordance with this opinion, we affirm the district court in its conclusion that Reliance is not liable for the amount of the deductible, the betterment and miscellaneous figures, but vacate the judgment for Reliance and remand for the purpose of taking evidence regarding Tidewater's ability to insure the crane.

AFFIRMED IN PART, VACATED AND REMANDED.