**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 10-1235**

───────────

RICHARD GITTER,

> Plaintiff - Appellant,

> v.

CARDIAC & THORACIC SURGICAL ASSOCIATES, LTD.; ROCKINGHAM
MEMORIAL HOSPITAL,

> Defendants - Appellees.

───────────

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.  Richard L. Williams, Senior
District Judge.  (3:07-cv-00546-RLW)

───────────

Argued: January 25, 2011              Decided:  March 23, 2011

───────────

Before TRAXLER, Chief Judge, and WILKINSON and GREGORY, Circuit
Judges.

───────────

Vacated and remanded by unpublished opinion.  Judge Gregory
wrote the majority opinion, in which Chief Judge Traxler joined.
Judge Wilkinson wrote a dissenting opinion.

───────────

**ARGUED:** Victor Lee Hayslip, BURR & FORMAN, LLP, Birmingham,
Alabama, for Appellant.  Marshall Howard Ross, WHARTON ALDHIZER
& WEAVER, PLC, Harrisonburg, Virginia; Charles Manley Allen,
GOODMAN, ALLEN & FILETTI, Glen Allen, Virginia, for Appellees.
**ON BRIEF:** Walker S. Stewart, BURR & FORMAN, LLP, Birmingham,
Alabama, for Appellant.

───────────

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

This is a diversity jurisdiction case regarding a claim of equitable estoppel in a breach of contract suit. After a hiring search, Appellees Cardiac & Thoracic Surgical Associates ("CTSA") and Rockingham Memorial Hospital ("RMH") chose Appellant Dr. Richard Gitter as their new chief cardiac surgeon. The parties failed to complete a signed contract memorializing the agreement, but Gitter closed his medical practice in Alabama and prepared to move to Virginia to begin working at RMH. When Appellees informed Gitter he was no longer their choice for the position, Gitter brought suit claiming that he had relied on their assurances of an agreement, and asking that they be equitably estopped from asserting a Statute of Frauds defense. Because there is a genuine issue of material fact as to the reasonableness of Gitter's reliance on Appellees' promises, the case should have survived summary judgment. Therefore, we vacate the order of summary judgment and remand to the district court for further proceedings.

I.

In the summer of 2006, CTSA and RMH initiated a hiring search to find a director for their new cardiac surgery program. Gitter submitted his name as a candidate for the position, and was first interviewed on or around December 6, 2006. A series

3

of interviews ensued, and Gitter was informed on February 12, 2007 that the panel conducting the search had recommended offering him the position. Sometime before March 14, 2007, Gitter completed a credentialing application as part of the hiring process.[*] One of the questions on the application asked:

> Whether voluntarily or involuntarily, has any Hospital . . . ever restricted (including probation), reduced, suspended, revoked, surrendered, or refused your participation and/or privileges, invoked probation or taken any disciplinary action against you for any reason other than incomplete medical records?

Joint Appendix ("J.A.") at 56. Gitter answered "no" to this question. This was in spite of the fact that he had been suspended by St. Vincent's Medical Center East in Alabama after failing to find coverage for an on-call shift he missed while traveling to Virginia to interview with RMH. On February 21, 2007, nine days after the suspension was issued, St. Vincent's rescinded the suspension and placed Gitter on probation. Gitter stated in his deposition that he considered this to be a return to the probationary status of all first-year medical staff, and not a disciplinary action. When asked in the deposition whether his answer to the above question was accurate, he responded,

---

[*] There is some confusion as to the exact date Gitter completed the application. The signed document is dated February 5, 2007, but Gitter acknowledged in his deposition that it should have read March 5, 2007. The returned application was stamped as received by the hospital on March 14, 2007. J.A. 231, 51.

"[p]erhaps not, in light of what we discussed today.  But at the time, I did feel it was accurate because of the issues we've discussed." J.A. 220-22.

On March 26, 2007, RMH received a completed form from St. Vincent's stating that there were no restrictions on Gitter's privileges, and recommending him without reservation.  St. Vincent's also submitted a form to the Iowa Board of Medical Examiners stating that disciplinary action had never been taken against Gitter.  Id.  Gitter concedes that his answers to the questions were incorrect, but maintains that he was not attempting to mislead RMH or CTSA and that he believed his answers were justified.

Negotiations on an employment contract had been ongoing, and the two parties came to an agreement on March 28, 2007. Although Appellees never signed the agreement, it is undisputed that both parties believed a deal had been reached.  Indeed, congratulatory emails were exchanged making clear that Gitter would be joining the staff at RMH.  The following day, Gitter resigned from Trinity Hospital in Birmingham and told friends he would be moving to Virginia.  Gitter also sold his house in Birmingham sometime before March 28, 2007.  On March 29, 2007, Gitter was informed that his physician's assistant had not been hired by RMH.  He responded negatively to this news, and the next day, despite their previous assurances to the contrary, the

5

selection committee decided not to hire Gitter. They feared that, based on the acrimony that arose during the negotiations, he would not be an easy person to work with.

On April 5, 2007, Gitter sued CTSA in the Circuit Court of Jefferson County, Alabama. He amended his complaint to add RMH as a defendant on April 17, 2007. The case was removed to the United States District Court for the Northern District of Alabama, and then transferred to the United States District Court for the Eastern District of Virginia. Gitter alleged (1) breach of contract; (2) fraud, misrepresentation, and deceit; (3) fraudulent suppression; (4) fraudulent inducement to enter a contract; and (5) conspiracy.

The case was referred to a magistrate judge, who on April 15, 2008, heard oral argument on Appellees' motions for summary judgment. On July 15, 2008, the magistrate judge issued a Report and Recommendation ("2008 Report") recommending that Appellees' motions be granted. The magistrate judge held that the Statute of Frauds doctrine applied, and that the parties' e-mails did not constitute a written agreement sufficient to satisfy that doctrine. The court then denied Gitter equitable relief with respect to both the fraud and breach of contract claims. Finding that Alabama law governed the fraud claim, the court determined that Gitter could not show that his reliance on Appellees' conduct was reasonable because, having knowingly

6

omitted material on the credentialing application, he had come to the matter with "unclean hands." Virginia law governed the breach of contract claim, and the court again ruled that Gitter could not seek equitable estoppel because of his unclean hands. The district court judge adopted the 2008 Report in full, and Gitter appealed only the breach of contract claim to this Court.

On July 21, 2009, we affirmed in part, vacated in part, and remanded the case to the district court. Gitter v. Cardiac & Thoracic Surgical Assocs., Ltd., No. 08-2221, 338 F.App'x 348 (4th. Cir. July 21, 2009). In a per curiam opinion, we held that the Statute of Frauds applied, and that the district court had correctly determined that the parties' e-mails did not constitute a sufficient written agreement. Id. at 349. However, we also held that the district court erred when it concluded that the unclean hands doctrine barred Gitter from claiming equitable estoppel. Id. at 349-50. Because the credentialing application had not been relied on, nor even reviewed by Appellees in their decision not to hire Gitter, his equitable estoppel claim was not automatically barred by his unclean hands. Id.

Finding that reasonable reliance is a necessary element of Virginia's equitable estoppel doctrine, Id. (citing T--- v. T---, 216 Va. 867 (Va. 1976)), we held that the magistrate judge did not conclusively determine whether Gitter could establish

7

the necessary elements of Virginia's equitable estoppel doctrine based on his post-March 28, 2007 conduct (that is, whether Gitter reasonably relied on Defendants' March 28, 2007 assurances that the terms of his employment were agreed upon). Gitter, 338 F.App'x at 350.

The matter was referred back to the magistrate judge, who again decided in favor of Appellees at summary judgment. The court found that its previous holding as to the fraud claim, that Gitter knowingly submitted a credentialing application with material omissions, was now the law of the case with respect to the breach of contract claim. Using this holding as proof of Gitter's knowledge of his errors, the court determined that Gitter's mistakes rendered his reliance on Appellees' assertions unreasonable as a matter of law. The district court adopted the new Report and Recommendation in full, and Gitter appeals its decision.

II.

We review de novo the decision of the district court to grant summary judgment. Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 283 (4th Cir. 2004). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The facts and inferences are to be drawn in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

In Virginia, the necessary elements of equitable estoppel are "representation, reliance, a change of position, and detriment." Barry v. Donnelly, 781 F.2d 1040, 1042-43 (4th Cir. 1986) (quoting T--- v. T---, 224 S.E.2d at 152). Additionally, a party's reliance upon the other's acts or assertions must be reasonable. "[E]stoppel occurs where 'the aggrieved party reasonably relied on the words and conduct of the person to be estopped.'" Barry, 781 F.2d at 1042 (quoting City of Bedford v. James Leffel Co., 558 F.2d 216, 217-18 (4th Cir. 1977)).


III.

The district court incorrectly applied the law of the case to Gitter's breach of contract claim. "[T]he doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988) (alteration

9

in original)). However, the district court erred when it stated that we upheld its previous finding that Gitter knowingly submitted a false application as the law of the case. We did not leave "undisturbed [the district court's] finding that Gitter knew on March 28, 2007 that he had submitted a credentialing application with material omissions, and that therefore, any reliance on Appellees' representation after March 28, 2007 was unreasonable." Gitter v. Cardiac & Thoracic Surgical Associates, No. 3:07CV546, 2010 WL 629843, at *7 (E.D. Va. Feb. 19, 2010). Rather, that is the very issue for which the case was remanded. Instead of making a full inquiry into the facts surrounding Gitter's reliance, the district court misapplied this Court's decision concerning Gitter's alleged omissions on the credentialing application, making of it a de facto determination that his reliance was unreasonable.

Contrary to the district court's order and Appellees' arguments, this Court never conclusively determined that Gitter knowingly or intentionally omitted material information on the credentialing application. Instead, we stated that "Gitter's application, even if misleading, could not have encouraged, invited, aided, compounded, or fraudulently induced Appellees. . . ." Gitter, 338 F.App'x at 349-50 (emphasis added). Likewise, we characterized Gitter's omissions as "allegedly incorrect responses." Id. at 350 (emphasis added). Further,

10

the original determination that Gitter was aware of his omissions was found in the 2008 Report's section discussing the unclean hands doctrine; we expressly vacated this portion of the district court's decision, holding "we vacate the district court's order to the extent the court applied Virginia's unclean hands doctrine." Id. We thus did not make a binding determination about the nature of Gitter's answers, and the district court was incorrect when it adopted as the law of the case its previous decision that Gitter knowingly misled Appellees.

Moreover, the district court erred when it refused to consider Gitter's testimony that he was not attempting to mislead Appellees with his answers, and then used its incorrect interpretation of the law of the case to decide that Gitter's reliance was unreasonable as a matter of law. The district court supported its decision by pointing to two unpublished Virginia cases where reliance was deemed "per se unreasonable." Binhammer v. Reilly, No. 1907-01-2, 2003 WL 282381, at *4-5 (Va. Ct. App. Feb 11, 2003); Schryer v. VBR, No. 101692, 1991 WL 835295, at *2 (Va. Cir. Ct. Nov. 13, 1991). In Binhammer, the plaintiff claimed reliance on incorrect assumptions she made about her father-in-law's lack of financial interest in her home. 2003 WL 282381, at *4-5. The father-in-law had provided money for the down payment on the house, and had deducted the

11

mortgage interest payments from his taxes. Id. at *1. This interest passed to Binhammer's ex-husband, Daniel Reilly, against whom Binhammer initiated suit, seeking enforcement of a previous settlement agreement that incorrectly purported that the father-in-law had no interest in the home. Id. at *2. The court found it "inconceivable that Binhammer would rely on the assumption that her father-in-law possessed no ownership or financial interest in the marital home when the evidence clearly and overwhelmingly indicates the contrary." Id. at *5. The court held that Binhammer's reliance on such an assumption was "per se unreasonable." Id.

In Schryer, an employee relied on oral assurances from agents of his employer that his term of employment would be for no less than five years. 1991 WL 835295, at *2. This was in spite of a written agreement that clearly stated plaintiff "could not rely" on statements made concerning his employment which were not part of the written agreement. Id. at *2. Plaintiff was fully aware of this condition, and thus his reliance upon the oral statements was unreasonable as a matter of law. Id.

However, both of these cases can be distinguished from the case at bar and do not tend to show how Gitter's reliance was "per se unreasonable." Unlike in Binhammer, Gitter was not confronted with evidence that "clearly and overwhelmingly

12

indicate[d]" Appellees' assurances of employment would not be upheld.  Binhammer, 2003 WL 282381, at *5.  Similarly, unlike the plaintiff in Schryer, Gitter was not expressly told that he "could not rely" on Appellees' emails stating that there was an agreement.  Schryer, 1991 WL 835295, at *2.  Instead, CTSA informed Gitter that the negotiations were complete and mailed him the employment agreement to sign.  RMH and CTSA did nothing to convey to Gitter that he could not rely on their assurances of an agreement.  Thus, the district court's determination of reasonableness as a matter of law was inappropriate in this case.

As the district court conceded, "[r]eliance and reasonableness 'are preeminently factual issues for the trier of fact' because they go to the subjective state of mind of the person asserting equitable estoppel."  Gitter, 2010 WL 629843, at *5 (quoting Miller v. Premier Corp., 608 F.2d 973, 982 (4th Cir. 1979)).  Thus, the bar for deciding the reasonableness of a party's reliance at the summary judgment stage is high.  See Bank of Montreal v. Signet Bank, 193 F.3d 818, 834 (4th Cir. 1999) ("the reasonableness of reliance [is a] question to be decided by the jury in light of . . . the nature of the parties and the transaction, the representations, [and] omissions. . . .");  Barry, 781 F.2d at 1043 (holding that issue of reasonable reliance was question of fact requiring trial);

13

Tidewater Equipment Co., Inc. v. Reliance Ins. Co., 650 F.2d 503, 506 (4th Cir. 1981) ("Whether or not an estoppel arises in any case is ordinarily a question for the trier of fact to determine.") (applying Maryland law).

This high bar has not been reached here. Gitter's belief that his answers were correct, or at least justified, is enough for a reasonable finder of fact to determine that he acted reasonably in relying on Appellees' assurances of employment. In his deposition testimony, Gitter acknowledged that his answers might have been factually wrong, but stated that "at the time, I did feel it was accurate because of the issues we've discussed." J.A. 220.

Additionally, St. Vincent's letters stating that it had not taken disciplinary action against Gitter also creates an inference that he was not unreasonable in thinking that his answers on the credentialing application were justified. Drawing all inferences in Gitter's favor, as we must do, his testimony, along with St. Vincent's letters, supports a finding that he reasonably believed his answers were correct, and that his employment agreement with RHM and CTSA was not in jeopardy. This is enough to raise a genuine issue of material fact as to his reasonableness, and to survive summary judgment.

14

IV.

Accordingly, the order of the district court is vacated, and the case is remanded for further proceedings as to whether Gitter's reliance on Appellees' assurances was reasonable.

<u>VACATED AND REMANDED</u>

WILKINSON, Circuit Judge, dissenting:

I would affirm the judgment for the reasons given by the district court. As it noted:

> Given Gitter's knowledge that he had made material misrepresentations or omissions in his Credentialing Application that the Defendants had not yet reviewed, where such misrepresentations or omissions would give the Defendants cause to terminate negotiations and/or any agreement, any reliance by Gitter on the representations of the Defendants was unreasonable. Gitter knew he had submitted an improper Credentialing Application, and he cannot claim reasonable reliance.

J.A. 355.

I agree with this observation. As the majority notes, the question asked of Gitter on the Credentialing Application was whether any hospital had suspended him or had placed him on probation. See Majority Opinion at 4. Gitter answered "no," despite the fact that he had actually been suspended "by St. Vincent's Medical Center East in Alabama after failing to find coverage for an on-call shift he missed while traveling to Virginia to interview with RMH." Id. After the suspension was rescinded, the hospital placed Gitter on probation. Id.

This answer would have concerned defendants for two separate and independent reasons. The first is that any hospital must be able to depend upon the availability of a cardiac surgeon should someone in the community suffer a heart attack or experience some other cardiac event. The second reason is that physicians who possess staff privileges at

16

hospitals or work together in smaller practice groups must enjoy a sense of mutual respect and trust. Gitter's erroneous response drew both his medical professionalism and veracity into some question, at least to such a degree that his reliance upon defendants' representations was not reasonable. For all I know, Dr. Gitter may be a fine surgeon, but it was not reasonable for him to expect, in light of his response, that defendants would take a leap of faith that things would run smoothly between the parties in their new and mutually dependent relationship.

With thanks to my colleagues for the thoughtful expression of their differing views, I respectfully dissent.

17