**James B. MILLER, Plaintiff,**

v.

**Marvin T. RUNYON, Jr. in his official capacity as United States Postmaster General General, Defendant.**

**No. 1:98CV00700.**

United States District Court, M.D. North Carolina.

Feb. 28, 2000.

Regan A. Miller, Charlotte, North Carolina, for plaintiff.

Gill P. Beck, Office of U.S. Attorney, Greensboro, NC, for defendant.
## MEMORANDUM OPINION

BEATY, District Judge.

This case is before the Court on Defendant's Motion to Dismiss or in the Alternative for Summary Judgment pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure [Document # 7]. Also before the Court is Defendant's Motion to Strike Jury Demand as to Plaintiff's Rehabilitation Act Claim [Document # 9]. For the reasons stated below, Defendant's Motion to Dismiss is GRANTED in part and DENIED in part. In addition, Defendant's Motion to Strike Plaintiff's Jury Demand is GRANTED.

## I. PROCEDURAL AND FACTUAL HISTORY

This case is before the Court on Plaintiff, James B. Miller's ("Plaintiff" or "Miller") claims that the United States Postal Service ("Defendant" or "the Agency") discriminated against him in violation of §§ 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 and 794 [1] and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[2] Miller, a black male, received a career appointment with the United States Postal Service as a mail handler on March 16, 1986. (Pl.'s Brief in Opp. to Mot. to Dismiss ("Pl.'s Brief") at 4.) While working as a carrier for the Agency, Miller injured his knee and, on February 21, 1990, was removed from the carrier classification. He was offered a modified part time position in the clerk classification. (*Id.* at 5.) Miller's modified position was to include work as a window clerk. Believing that he had not received the training and work assignments promised to him in his modified position, Miller filed a discrimination complaint in August of 1990.

---

1. Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, provides, in pertinent part:

 Each department, agency, and instrumentality (including the United States Postal Service and the Postal Rate Commission) ... shall, ... submit ... an affirmative action program plan for the hiring, placement, and advancement of individuals with disabilities in such department, agency, instrumentality, or Institution.

 29 U.S.C. § 791(b). Remedies for violations of 29 U.S.C. § 791 are governed by 29 U.S.C. § 794a(a)(1).

 Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides in pertinent part:

 No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

 29 U.S.C. § 794(a). Remedies for violations of 29 U.S.C. § 794 are governed by 29 U.S.C. § 794a(a)(2).

2. Title VII, 42 U.S.C. § 2000e–16(a) provides, in pertinent part:

 All personnel actions affecting employees or applicants for employment ... in the United States Postal Service ... shall be made free from any discrimination based on race, color, religion, sex, or national origin.

 42 U.S.C. § 2000e–16.
**463**

Miller alleges that after filing his complaint in 1990, his work hours began to decrease, even though he claims there was work available that he could have performed. (*Id.* at 6.) Miller also alleges that he was subjected to disparaging remarks about his disability, that he was given more difficult tasks than white employees, and was not offered the training necessary to allow him to work as a window clerk. (*Id.* at 6–7.) On October 15, 1991, Miller contacted an Equal Employment Opportunity ("EEO") Counselor and alleged that he was treated less favorably than a white female employee. Miller's final contact with the counselor was November 21, 1991. On December 5, 1991, Miller filed an administrative complaint (the "1991 EEO Complaint") in which he claimed that on October 15, 1991, he was discriminated against because of his race, sex, physical disability, and retaliated against for his August, 1990 EEO contact. (Def.'s Brief in Supp. of Mot. to Dism. or in the Alt. for Summ.Jud. ("Def.'s Brief") at 2.) In a statement attached to his 1991 EEO Complaint, Miller explained in greater detail the basis of his charge. In particular, he complained that he was treated less favorably in terms of the type of work and hours of work assigned in comparison with a white female co-worker. He specifically requested equitable distribution of work hours between his co-worker and himself. However, Miller did not mention in any manner an allegation of harassment due to his disability by his supervisors or co-workers in his 1991 EEO Complaint or the statement attached to that Complaint.

On December 3, 1992, Miller and the Agency settled the 1991 EEO Complaint. In the settlement agreement, Miller agreed to withdraw his complaint in return for the promise that he would be assigned hours on an equitable basis and would be given window training, upon approval by a doctor. (*Id.* at 3; Pl.'s Ex. B.) The settlement agreement also provided that if the Agency failed to adhere to the terms of the settlement, the Agency would, on Miller's written request, "reinstate the complaint for further processing from the point processing ceased under the terms of this agreement." (Pl.'s Ex. B.)

On February 10, 1994, believing that the Agency had breached the settlement agreement, Miller wrote a letter, addressed to an "EEO Counselor/Investigator," and requested that his case be reinstated. (Pl.'s Ex. C.) In this letter, Miller did not allege that the Agency had engaged in any additional discriminatory acts other than those that served as the basis for his 1991 EEO Complaint, nor did he request EEO counseling. On April 17, 1994, in a letter to the "EEOC," Miller claimed that the "primary reason" for the breach was that his supervisor, Steve Purser, did not provide reasonable accommodations for his disability. In addition, Miller claimed that in August of 1993, he was moved from his distribution position to a dispatch job without a written position description. Finally, Miller claimed that he had passed the written exam required of window clerks. (Pl.Ex.D.)

On March 31, 1995, in response to Miller's request, the United States Equal Employment Opportunity Commission, Office of Federal Operations, issued a decision reinstating Miller's 1991 EEO Complaint. The decision included an Order, which stated that "[t]he agency ... is ORDERED to reinstate appellants complaint and to resume processing from the point processing ceased." (Pl. ex. E at 3.) Upon reinstatement, Miller's 1991 EEO Complaint was heard by an EEOC Administrative Judge on March 29, 1996. On or about June 3, 1996, the Administrative Judge issued a finding that Miller had not established, by a preponderance of the evidence, that he was discriminated against as alleged in his 1991 EEO Complaint. (Def.Ex. C–1 at 12.) The Postal Service issued a final agency decision on July 16, 1996, concurring with the Administrative Judge's finding of no discrimination. (Def.Ex. C–2 at 2.) On August 14, 1996, Miller appealed the Postal Service's final agency decision to the EEOC. At the time Miller filed the present action, on June 26,

1998, more than 180 days had passed since Miller appealed the final agency decision to the EEOC. (Compl.¶ 17.)

In its decision ordering that Miller's 1991 EEO Complaint be reinstated, the EEOC had specifically noted that Miller claimed that he had been subjected to discrimination when he was reassigned to a dispatch position in August, 1993. (Pl. Ex.D.) The decision then stated: "As it appears that [Miller] has not received counseling with regard to that allegation, he is instructed to contact an EEO Counselor within 15 days of receiving this decision *if he wishes to pursue the matter.*" (*Id.*) On April 13, 1995, less than 15 days after the EEOC issued its order reinstating Miller's 1991 EEO Complaint, Miller contacted an EEO Counselor regarding his claim of alleged discrimination involving the reassignment of job duties that occurred in August, 1993. At the conclusion of counseling, Miller filed a formal complaint regarding this second allegation of discrimination on July 22, 1995 (the "1995 EEO Complaint"). In the 1995 EEO Complaint, Miller claimed that he was discriminated against because "[he] was reassigned to a dispatch clerk position which forced [him] too [sic] work outside walking and lifting limitations. Work hours were decreased. Malicious intent due too [sic] race, sex, disability, prior EEO activity." (Gov.Ex.C–7.) The 1995 EEO Complaint further stated that the date of discrimination was "approximately" August 1, 1993. On August 14, 1995, the Agency dismissed Miller's 1995 EEO Complaint for untimely EEO Counselor contact. (Gov.Ex.C–4.) On August 14, 1996, the EEOC affirmed the final agency decision to dismiss Miller's 1995 EEO Complaint on the same grounds. (Gov.Ex.C–5.) On May 21, 1998, the EEOC denied Miller's request for reconsideration as to the 1995 EEO Complaint. (Gov.Ex.C–6.)

On June 26, 1998, Miller filed the case that is now before this Court. In this Complaint, Miller seeks recovery under §§ 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Miller seeks to recover based on the allegations of discrimination contained in both his 1991 and 1995 EEO Complaints, as well as on a theory of harassment based on disability not raised in either of his EEO Complaints. Defendant filed its Motion to Dismiss or in the Alternative for Summary Judgment that is now before the Court. Defendant has also filed a Motion to Strike Plaintiff's Jury Demand as to his Rehabilitation Act Claim. The Court will consider these motions in turn.

## II. MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Defendant has filed a Motion to Dismiss or in the Alternative for Summary Judgment under Federal Rules of Civil Procedure 12(b)(6) and 56. Defendant's motion raised two primary issues: 1) whether Miller had exhausted his administrative remedies with regard to the claims asserted in his Complaint filed with this Court; and 2) whether Miller could establish a *prima facie* case to support his claims or discrimination and retaliation. On the same day that Plaintiff filed his response to Defendant's motion, he filed a Motion for Extension of Time to Respond to Motion for Summary Judgment [Document # 12]. In support of that motion, Miller's counsel filed an affidavit in which he stated that he needed additional time to obtain reports from physicians to more clearly establish that Miller had a disability as defined by the Rehabilitation Act. Miller's counsel also stated that he needed more time to discover documents regarding Miller's qualifications and availability for work. Miller's counsel also wanted to gather information regarding the motives behind the Agency's actions. Magistrate Judge Sharpe issued an order granting Miller's motion to extend time to respond to Defendant's Motion for Summary Judgment, ordering that discovery would be opened in this case after the Court ruled on Defendant's Motion to Dismiss. Given this background, in considering Defendant's

Motion to Dismiss or in the Alternative for Summary Judgment, this Court will not consider Defendant's Motion to Dismiss or in the Alternative for Summary Judgment with respect to the second issue raised by Defendant, that is, whether Miller has established a *prima facie* case regarding his claims of discrimination and retaliation.

On the other hand, neither party contends that discovery was needed to determine the first issue of whether Miller had exhausted his administrative remedies with regard to his 1991 and 1995 EEO Complaints. In fact, Miller stated in his Motion for Extension of Time that he believed that Defendant's Motion to Dismiss and Motion for Summary Judgment "primarily" called into question whether Miller had exhausted his administrative remedies and did not consider these contentions to go to the substantive issues to be determined in the case. Moreover, in his Brief in Response to Defendant's Motion to Dismiss, Miller, through his attorney, stated that "there is no factual dispute about the administrative records of [Miller's] claims." (Pl.'s Brief at 8.) Finally, both Miller and the Agency have attached to their briefs affidavits and other materials addressing the question of whether Miller exhausted his administrative remedies. Therefore, the Court will consider the remaining basis for Defendant's Motion to Dismiss or in the Alternative for Summary Judgment, that is, whether Miller failed to exhaust his administrative remedies with regard to the claims asserted in the suit filed with this Court.

This case comes before the Court on Defendant's Motion to Dismiss under Rule 12(b)(6) or in the Alternative for Summary Judgment under Rule 56. Both parties have submitted affidavits and other documents to the Court setting out the facts surrounding the administrative procedures Miller pursued with regard to both his 1991 and 1995 EEO Complaints. This Court will not exclude the affidavits and exhibits filed by both parties and therefore will consider Defendant's motion as a motion for Summary Judgment under Rule 56 as it relates to Miller's failure to exhaust

his administrative remedies with respect to his 1991 and 1995 EEO Complaints. *See* Fed.R.Civ.P. 12(b) ("If on a motion asserting the defense numbered (6) . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. . . .")

Summary Judgment is appropriate "if there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202, 211 (1986). There is a genuine issue as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party bears the initial burden of showing that the nonmovant has failed to produce evidence to support its case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265, 275 (1986). In order to defeat the motion for summary judgment, the nonmovant must demonstrate a triable issue of fact; mere allegations and denials are insufficient to establish a genuine issue of fact. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505, 91 L.Ed.2d at 212.

### A. MILLER'S 1991 EEO COMPLAINT

■ There is no dispute between the parties that Miller did in fact exhaust all of his administrative remedies with regard to his 1991 EEO Complaint. Defendant, through counsel, states that "Plaintiff has exhausted his administrative remedies with respect to only one complaint of discrimination [that charged in Miller's 1991 Complaint]." (Def.'s Brief at 6.) After an independent review of the facts of this case, set out above, this Court agrees that Miller exhausted his administrative remedies with regard to his 1991 EEO Complaint. *See generally* 42 U.S.C. § 2000e–

16; 29 C.F.R. § 1614.103 *et seq.* (setting out administrative processes that federal employees must follow to pursue claims under Title VII and the Rehabilitation Act).[3]

Notwithstanding the fact that Miller exhausted his administrative remedies with regard to his 1991 EEO Complaint, the Court must resolve the dispute between the parties regarding which of Miller's specific claims asserted in his Complaint filed with this Court are properly before this Court. This issue arises because Defendant contends that Miller's present claim of harassment based on disability was not raised in his 1991 EEO Complaint.[4] Defendant further notes that this Court may only consider those of Miller's claims that were raised in his 1991 EEO Complaint because "[a] plaintiff's civil complaint is limited in scope to the investigation which could have reasonably been anticipated to have grown out of the administrative charge." *Dachman v. Shalala,* 46 F.Supp.2d 419, 434 (D.Md.1999) (citing *Chisholm v. United States Postal Svc.,* 665 F.2d 482, 491 (4th Cir.1981); *EEOC v. General Elec. Co.,* 532 F.2d 359, 368–69 (4th Cir.1976)).

In his 1991 EEO Complaint, Defendant alleged discrimination due to his race, sex, and disability, as well as retaliation for his previous EEO contact in 1990. In support of his claims, in a document filed with the 1991 EEO Complaint, Miller alleged that on October 15, 1991, he was given more physically demanding assignments, assigned fewer hours of work, and received inequitable training in comparison to a white female co-worker. (Pl.'s Ex. A.) Therefore, claims asserted by Miller that on October 15, 1991, he was discriminated against because of his race, sex, and disability, and retaliated against for his prior EEO contact when the Agency allegedly inequitably assigned work and training are part of his 1991 EEO Complaint and are properly before the Court.

Miller's present Complaint filed with this Court also alleges that the Agency harassed him because of his disability in violation of §§ 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794. (Compl.¶¶ 20, 21.) Miller's present harassment claims are apparently based on allegations contained in the Complaint filed with this Court that his supervisor and co-workers made fun of him because of his disability. (Compl.¶ 11.) In his 1991 EEO Complaint, Miller did not complain of harassment by his co-workers or supervisors.[5] Therefore, the Agency argues that claims based on this alleged harassment should be dismissed because Miller failed to raise them in his 1991 EEO Complaint.

■ As discussed above, Miller's Complaint filed with this Court is limited in

---

**3.** Title VII exhaustion requirements apply to cases brought under the Rehabilitation Act. *See* 29 U.S.C. § 794a(a)(1); *Spence v. Straw,* 54 F.3d 196. 199–202 (3d Cir.1995); *Doe v. Garrett,* 903 F.2d 1455, 1458–62 (11th Cir. 1990).

**4.** Defendant also objects to Miller's assertion in his Complaint filed with this Court that the actions alleged constitute a "failure to accommodate." Defendant argues that this allegation amounts to an assertion of liability not contained in Miller's 1991 EEO Complaint, which simply charged "discrimination" based on disability. The Court notes, however, that failure to accommodate is one type of disability discrimination, another being disparate treatment. *See Sieberns v. Wal–Mart Stores, Inc.,* 125 F.3d 1019, 1021–22 (7th Cir.1997). Because, as discussed above, the Court will not consider the merits of Miller's claims in this Memorandum Opinion, it will not determine whether the facts alleged by Miller in his 1991 EEO Complaint are sufficient to establish a claim of disability discrimination based on failure to accommodate. However, to the extent that Miller may attempt to assert such a claim, the Court notes that the basis for that claim must arise from facts within the scope of the investigation that could reasonably be expected to arise from his 1991 EEO Complaint. *See Dachman v. Shalala,* 46 F.Supp.2d 419, 434 (D.Md.1999).

**5.** Miller also failed to allege any facts regarding harassment due to his disability in his 1995 EEO Complaint. However, because this Court concludes, as discussed more fully below, that the claims raised in Miller's 1995 EEO Complaint must be dismissed, the present discussion will focus on Miller's 1991 EEO Complaint only.

scope to the investigation that could be expected to have grown out of his 1991 EEO Complaint that was filed December 5, 1991. *See Dachman*, 46 F.Supp.2d at 434. It is not clear from Miller's present Complaint filed with this Court whether his claims of harassment are intended to allege separate claims based on a hostile work environment theory. However, to the extent that Miller does attempt to allege a claim of hostile work environment based on his disability, it is clear that he failed to raise that issue in his 1991 EEO Complaint. To establish a claim of harassment based on hostile work environment Miller "must show that: (1) the harassment was unwelcome; (2) the harassment was based on his [disability]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir.1998) (discussing harassment based on race and age) (citing *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir.1997)). *See also Shiflett v. GE Fanuc Automation Corp.*, 960 F.Supp. 1022, 1035 (W.D.Va.1997) ("Not unexpectedly, courts have analogized harassment based on disability to hostile work environment claims under Title VII, 42 U.S.C. § 2000e et seq.") However, nothing in Miller's 1991 EEO Complaint would suggest that he was raising a claim of harassment due to hostile work environment; in particular, Miller failed to allege any harassing acts by his supervisors or co-workers in his 1991 EEO Complaint. Therefore, to the extent that Miller attempts to raise hostile work environment claims based on harassment due to his disability that are distinct from his allegations of discrimination arising from the Agency's alleged inequitable assignment of work and training on October 15, 1991, then Miller's hostile work environment claims are not properly before this Court as part of his 1991 EEO Complaint. *See Taylor v. Virginia Union University*, 193 F.3d 219, 239 (4th Cir.1999) (holding that plaintiff failed to exhaust administrative remedies with regard to claims of sexual harassment because EEO complaint only alleged sexual discrimination); *Riley v. Technical and Management Servs. Corp.*, 872 F.Supp. 1454, 1459 (D.Md.1995) (holding that sexual harassment claims were not properly raised when plaintiffs' EEO complaint mentioned only discrimination). It therefore appears to the Court that with regard to his 1991 EEO Complaint, Miller exhausted his administrative remedies only as to his claims of discrimination based on sex, race, and disability, and retaliation for prior EEO contact, and only those claims are properly before this Court.

### B. MILLER'S 1995 EEO COMPLAINT

In 1995, Miller filed a second EEO complaint alleging that the Agency had discriminated against him because of his race, sex, and disability and retaliated against him for prior EEO contact when it reassigned his work duties in August, 1993. As a federal employee, Miller was required to seek EEO counseling regarding the alleged discriminatory acts by the Agency within 45 days of the date that the events occurred. *See* 29 C.F.R. § 1614.105(a)(1). ("An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory, or, in the case of personnel action, within 45 days of the effective date of the action.") In his 1995 EEO Complaint, Miller specifically alleged that he was discriminated against on "August 01 1993 approximately" when he was "reassigned to a dispatch clerk position which forced [him] too [sic] work outside walking and lifting limitations. Work hours were decreased. Malicious intent due too [sic] race, sex, disability, prior EEO activity." Miller, however, did not seek EEO counseling with regard to this allegedly discriminatory event until April 13, 1995, more than 45 days after August 1, 1993, the date on which Miller alleged in his 1995 EEO Complaint that the discriminatory act took place. As the Fourth Circuit has held, failure of a federal employee

to initiate timely EEO Counselor contact is grounds for dismissal for failure to exhaust administrative remedies. *See Zografov v. V.A. Medical Center,* 779 F.2d 967 (4th Cir.1985). Therefore, unless Miller's claim falls within an exception to the requirement that he contact an EEO Counselor within 45 days of August 1, 1993, the date of the alleged discrimination, his 1995 EEO Complaint must be dismissed for his failure to exhaust administrative remedies. Miller argues that two exceptions apply to this case: equitable estoppel and the continuing violation theory. Miller also argues that even if the Court finds that he failed to exhaust his administrative remedies as to his 1995 EEO Complaint, his claims regarding the reassignment that took place in August 1993 are properly before this Court because they are like or related to those claims raised in his 1991 EEO Complaint for which he did exhaust his administrative remedies. The Court will consider each of Miller's arguments that the claims regarding discrimination and retaliation raised in his 1995 EEO Complaint are properly before the Court.

### 1. EQUITABLE ESTOPPEL

 Miller first argues that the Agency should be estopped from asserting his failure to timely seek EEO counseling as a bar to his 1995 Complaint. In *Zografov,* the Fourth Circuit noted that the federal government may be estopped from asserting the time limit on a federal employee seeking EEO counseling as a bar to that employee seeking relief; however, in order for estoppel to apply, a plaintiff must at least make a showing of affirmative misconduct on the part of the government. *See id.* at 969. Miller makes no such allegation in his 1995 EEO Complaint, in his Complaint filed with the Court, or in his brief. Instead, Miller attempts to support his argument that estoppel should apply in this case based' on the EEOC's opinion that reinstated his 1991 EEO Complaint. In that opinion, the EEOC noted that, in addition to his charges that the Agency had violated the 1992 settlement agreement, Miller had alleged that

he had been discriminated against when he was reassigned to a dispatch position in August of 1993. The Commission then wrote: "As it appears that appellant has not received counseling with regard to that allegation, he is instructed to contact an EEO Counselor within 15 days of receiving this decision if he wishes to pursue the matter." (Pl.'s Ex. E at 3.) Miller makes much of this statement, contending that it provided him with 15 days to seek EEO counseling with regard to his claims of discrimination that took place in 1993. (Pl.'s Brief at 11.) However, Miller's arguments are incorrect. As an initial matter, the statement on which Miller relies does not purport to extend the time in which Miller could seek counseling with regard to his allegations of discrimination in 1993. As the EEOC noted when considering this statement in Miller's subsequent appeals, "[t]he Commission did not state ... that [Miller's] contact with an EEO Counselor would be timely if [Miller] complied with the 15–day deadline. No determination regarding whether [Miller's] allegations was [sic] timely raised was made prior to [Miller's] EEO contact." (Def.'s Ex. C–5, EEOC Appeal, at 2.) The plain language of the statement simply requires Miller to seek counseling within a certain number of days, but suggests nothing about whether that contact would be considered timely. In addition, a finding of estoppel is inappropriate in this case because there is no evidence that Miller relied on this statement in making a decision to wait to seek EEO Counseling regarding his August, 1993 reassignment. As the Fourth Circuit has made clear, "a necessary element of any estoppel is reliance by the party claiming the estoppel." *Tidewater Equip. Co. v. Reliance Ins. Co.,* 650 F.2d 503, 506 (4th Cir.1981). In this case, Miller did not rely on the statement by the EEOC in choosing to delay contacting an EEO Counselor; to the contrary, the EEOC's statement encouraged Miller promptly to seek EEO counseling. Therefore, the Court concludes that there is nothing about the Agency's actions in this case which causes

it to be estopped from asserting that Miller's 1995 EEO Complaint should be dismissed for his failure to seek EEO counseling within 45 days of the discriminatory action which is alleged to have occurred August 1, 1993.

## 2. CONTINUING VIOLATION

Miller next argues that the 1995 EEO Complaint should not be dismissed because he has alleged a "continuing violation." In particular, Miller claims that the alleged discrimination that occurred in 1993 when he was reassigned to a new position continued until 1995, when he sought EEO counseling and filed his 1995 EEO Complaint. Therefore, Miller argues that his contact with an EEO Counselor on April 13, 1995, was sufficient to encompass all alleged discriminatory acts engaged in by the Agency from 1993 until 1995.

 The continuing violation theory saves untimely claims that "can be related to a timely incident as a 'series of separate but related acts' amounting to a continuing violation." *Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir.1997) (quoting *Jenkins v. Home Ins. Co.*, 635 F.2d 310, 312 (4th Cir.1980) (per curiam)). The Fourth Circuit has held that, at a minimum, a plaintiff who seeks to bring charges under a continuing violation theory must allege at least one discriminatory act within the relevant time period. *See Woodard v. Lehman*, 717 F.2d 909, 915 (4th Cir.1983). In this case, the relevant time period is 45 days before Miller sought EEO counseling in 1995, that is, 45 days before April 13, 1995. However, Miller's 1995 EEO Complaint only states that Miller was subjected to a discriminatory act when he was reassigned duties on August 1, 1993, more than 45 days before he sought finally EEO counseling in 1995. Similarly, Miller's Complaint filed with this Court states that "[b]eginning on or about August 1, 1993, a new supervisor began assigning Plaintiff tasks normally performed by a Mailhandler or Dispatcher as opposed to a Distribution Clerk without formally changing Plaintiff's job description." (Compl.¶ 16.) Miller's Complaint filed with this Court

also broadly and without elaboration alleges that the "conduct of the Agency since August 1, 1993 was discriminatory conduct." (*Id.* ¶ 7.) There is simply no allegation of any specific discriminatory action by the Agency that took place within 45 days of April 13, 1995, when Miller sought EEO counseling for the discriminatory actions that are alleged to have occurred on August 1, 1993, and which allegedly continued until April 13, 1995. As the Fourth Circuit has stated, an allegation of continuing discrimination without any identification of a discriminatory event within the statute of limitations period is insufficient to prove a continuing violation. *Woodard*, 717 F.2d at 914–16. Therefore, Miller fails to allege a continuing violation.

Notwithstanding his failure to allege any discriminatory act by the Agency within 45 days before he sought EEO counseling in 1995, Miller argues that he has established a continuing violation because he was not aware that the reassignment of work that began in 1993 was discriminatory until it had continued long enough that he knew there was a pattern of discrimination. (Pl.'s Brief at 9–10.) Therefore, he claims that he should have been able to delay seeking EEO counseling and be allowed to bring all of the acts that established that pattern of discrimination under the ambit of his 1995 EEO Complaint. For this argument, Miller relies on the Fifth Circuit's decision in *Berry v. Board of Supervisors*, 715 F.2d 971 (5th Cir.1983). In *Berry,* the court suggested that one factor to examine in determining whether a plaintiff has alleged a continuing violation is whether the earlier acts that the plaintiff alleges were discriminatory had a sufficient permanency to trigger the plaintiff's awareness of the alleged violation. *See id.* at 981. However, *Berry* offers no assistance to Miller because of Miller's admitted knowledge of what he contends were discriminatory acts more than 45 days before he sought EEO counseling on April 13, 1995. Specifically, the facts of this case show that Miller believed that the Agency engaged in discriminatory acts as

early as August, 1993, and no later than April, 1994. In his 1995 EEO Complaint, Miller based his charges on his claim that a single reassignment taking place on "approximately" August 1, 1993 was discriminatory, not on a series of related acts. This suggests that Miller believed that the reassignment was significant standing alone. In addition, on April 17, 1994, nearly a year before Miller sought EEO counseling regarding his 1995 EEO Complaint, he sent a letter to the EEOC discussing the Agency's alleged breach of the 1992 settlement agreement. In that letter, Miller specifically stated that his supervisor, Steve Purser, "chooses to discriminate against [him] by not providing [him] with reasonable accommodations that the postal service has made available." (Pl.'s Ex. D.) The letter also complained of Miller's August 1993 reassignment that formed the basis of Miller's 1995 EEO Complaint, alleging that "[i]n August of 1993 Frank Galub PM at the Concord NC MPO moved me from my distribution job to a dispatch job without providing a written description, as required by OWCP law." (*Id.*) This evidence clearly shows that the acts which formed the basis of Miller's 1995 EEO Complaint were sufficiently permanent to make Miller aware of the alleged violation no later than April 17, 1994, nearly a year before he sought EEO counseling with regard to his 1995 EEO Complaint. Therefore, this Court finds that Miller fails to allege a continuing violation that would have allowed him to extend his obligation to seek EEO counseling beyond 45 days after the alleged discriminatory act that took place on August 1, 1993.

### 3. LIKE OR RELATED CLAIMS

█ In addition to arguing that estoppel and continuing violation theories should allow him to assert the claims contained in his 1995 EEO Complaint in this Court, Miller contends that the allegedly discriminatory reassignment of work by the Agency that took place in August, 1993 is also properly before this Court because that act is "like or related" to the charges raised in his 1991 EEO Complaint. (Pl.'s

Brief at 10.) Specifically, Miller argues that because he exhausted his administrative remedies with regard to his 1991 EEO Complaint, he should be able to bring his subsequent claims of discrimination that are "like or related" to those raised in his 1991 EEO Complaint without first exhausting his administrative remedies with regard to those subsequent claims. For this argument, Miller relies on *Nealon v. Stone*, 958 F.2d 584 (4th Cir.1992). In *Nealon*, the Fourth Circuit noted that there is a "generally accepted principle that the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to the allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." *Id.* at 590 (quoting *Hill v. Western Elec. Co.*, 672 F.2d 381, 390 n. 6 (4th Cir.1982) (citations and internal quotations omitted)). *See also Evans v. Technologies Applications and Serv. Co.*, 80 F.3d 954, 963 (4th Cir.1996) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.")

Miller's claims of discrimination in 1993 are not "like or related to" those set out in his 1991 EEO Complaint. As discussed above, Miller's 1991 EEO Complaint simply alleged that he was inequitably assigned work hours, job assignments, and training in comparison with a white female employee. In contrast, in his 1993 EEO Complaint, Miller alleged that, with malicious discriminatory intent on the part of the Agency, he had been reassigned to a different position, received reduced work hours, and forced to work outside his physical limitations. Moreover, the alleged discrimination in August, 1993 occurred nearly two years after the alleged discriminatory acts in October, 1991. In addition, Miller acknowledges that the discrimination that allegedly took place in 1993 followed a period of eight months in which Miller does not allege that the

Agency took any discriminatory actions. Finally, the EEOC's treatment of Miller's allegations regarding discrimination beginning in 1993 gives further indication that that alleged discrimination was not like or related to the discrimination alleged in his 1991 EEO Complaint. Specifically, when issuing its order reinstating Miller's 1991 EEO Complaint, the EEOC treated the alleged 1993 reassignment as an unrelated issue. In fact, the EEOC informed Miller that if he wished to bring a discrimination complaint with regard the August 1, 1993 reassignment, he should first exhaust his administrative remedies with regard to that separate claim by seeking EEO counseling. In addition, the administrative judge who heard Miller's 1991 EEO Complaint framed the issue before her as

> whether [Miller] proved, by a preponderance of the evidence, that he was discriminated against [on the basis of race, sex, and disability] and [retaliated against for prior EEO activity] ... when, on October 15, 1991, he became aware that he was being treated differently than a part-time flexible employee ... concerning training, number of hours worked, and job assignments.

(Def.'s Ex. C–1 at 1.) The judge did not consider any of the alleged discrimination that took place in 1993. To allow Miller now to bring his claims regarding the alleged 1993 discrimination under the auspices of his 1991 EEO Complaint when such claims are not like or related to the charges in his 1991 EEO Complaint would improperly circumvent the EEOC's investigatory and conciliatory role. *See Nicol v. Imagematrix, Inc.,* 767 F.Supp. 744, 752 (E.D.Va.1991). For these reasons, the Court determines that Miller's allegations of discrimination occurring in 1993 are not like or related to his allegation of discrimination occurring in 1991.

Finally, in a separate but related argument also based on *Nealon,* Miller asserts that his retaliation claims in his 1995 EEO Complaint should not be dismissed because those claims were related to and grew out of a pending EEOC charge. *See Nealon,* 958 F.2d at 590. However, this case is unlike that considered in *Nealon.* In *Nealon,* while the plaintiff's charge was pending before the EEOC, the defendant allegedly retaliated against the plaintiff for filing her charge. The court concluded that it was unnecessary for the plaintiff to file a separate claim alleging retaliation and exhaust her administrative remedies with regard to that claim under those circumstances and allowed her to pursue her retaliation claim in district court. In this case, however, Miller's retaliation charges did not arise while his prior charge was pending before the EEOC. According to Miller's 1995 EEO Complaint, the alleged retaliation took place in August, 1993. At that time, Miller had settled his 1991 EEO Complaint. He did not take steps to reopen the 1991 EEO Complaint until April, 1994. In addition, that Complaint was not, in fact, re-opened until April 7, 1995, when the EEOC issued its reinstatement order. Because Miller had no pending complaint before the EEOC when the alleged retaliation took place on August 1, 1993, he should have brought his retaliation charges in a separate claim. *See Burke v. AT & T Technical Servs. Co.,* 55 F.Supp.2d 432, 437 n. 5 (E.D.Va.1999). In fact, Miller attempted to do just that when he belatedly asserted his claim of retaliation in his untimely 1995 EEO Complaint. His present argument, that this Court may hear his claims of retaliation arising from the Agency's alleged actions in 1993, amounts to an effort to avoid the administrative exhaustion requirements that applied to his 1995 EEO Complaint. Because the alleged retaliation by the Agency took place when no EEOC complaint was pending and because Miller failed to timely exhaust his administrative remedies with regard to his claims that the Agency retaliated against him in 1993, that claim of retaliation is dismissed.

Therefore, the Court concludes that Miller did not exhaust his administrative remedies with regard to any of the claims asserted in his 1995 EEO Complaint. Accordingly, those claims are DISMISSED.

## III. MOTION TO STRIKE JURY TRIAL DEMAND

Defendant has filed a Motion to Strike Plaintiff's Jury Demand as to his Rehabilitation Act Claim. In its brief in support of this motion, Defendant also argues that Miller has no right to a jury trial under Title VII for acts that occurred prior to November 21, 1991. (Def.'s Brief in Supp. of Mot. to strike Pl.'s Jury Demand at 2.) As discussed above, the Court concludes that Miller failed to exhaust his administrative remedies with regard to his 1995 EEO Complaint. Therefore, the only claims remaining are those raised by Miller in his 1991 EEO Complaint. In that Complaint, Miller alleged that the discriminatory acts took place on October 15, 1991. Therefore, this Court must consider whether Miller is entitled to a jury trial as to his claims that the Agency discriminated against him on October 15, 1991.

■ Miller has brought claims under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and § 501 of the Rehabilitation Act, 29 U.S.C. § 791. In the Civil Rights Act of 1991 § 102, 42 U.S.C. § 1981a, Congress allowed plaintiffs suing under Title VII and § 501 of the Rehabilitation Act, 29 U.S.C. § 791, the right to sue for compensatory and punitive damages in certain cases. *See* 42 U.S.C. §§ 1981a(a)(1) and (2). In the same statute, Congress provided that if a plaintiff seeks compensatory or punitive damages under 42 U.S.C. § 1981a, any party may demand a trial by jury. *See* 42 U.S.C. § 1981a(c)(1). However, it is well established that the substantive rights set out in the Civil Rights Act of 1991 § 102, including the right to trial by jury, are not retroactive, and do not apply to events predating the enactment of that act. *See Landgraf v. USI Film Products*, 511 U.S. 244, 281–83, 114 S.Ct. 1483, 1505–07, 128 L.Ed.2d 229, 262–64 (1994); *Preston v. Com. of Virginia ex rel. New River Com. Coll.*, 31 F.3d 203, 207 (4th Cir.1994) ("[The] substantive provisions of [42 U.S.C. §§ 1981a(a)(1) and (2) ] should not be applied to conduct occurring before the effective date of the [Act]."). The Civil Rights Act of 1991 was enacted on November 21, 1991. Because the Court has dismissed all of Miller's claims except those alleging discrimination and retaliation that took place on October 15, 1991, Miller's remaining claims under Title VII and § 501 of the Rehabilitation Act predate the enactment of the Civil Rights Act of 1991. Therefore, Miller has no right to trial by jury under that act for his claims under either Title VII or § 501 of the Rehabilitation Act.

■ Miller has also asserted a claim under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and demanded a jury trial with regard to that claim. The 1991 Civil Rights Act did not address the right to trial by jury for such claims. Therefore, the fact that Miller's claim under § 504 predates the enactment of the Civil Rights Act of 1991 does not resolve whether Miller has a right to a jury trial with regard to that claim.

Nevertheless, for the reasons that follow, the Court concludes that Miller has no right to a jury trial for his claim under § 504 of the Rehabilitation Act. The Court's decision is based on the principle that the right to a jury trial under the Seventh Amendment does not apply to actions against the federal government. *See Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548, 553 (1981). "[T]he plaintiff in an action against the United States has a right to trial by jury only where Congress has affirmatively and unambiguously granted that right by statute." *Id.* at 168, 101 S.Ct. 2698, 69 L.Ed.2d at 558. Thus, in order for Miller to have a right to trial by jury of his claim against the United States under § 504 of the Rehabilitation Act, there must be some statutory provision expressly granting him that right. Remedies for violations of § 504 of the Rehabilitation Act are set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000d, *et seq. See* 29 U.S.C. § 794a(a)(2). However, as the Fourth Circuit has noted, "neither § 504 nor Title VI provide any guidance on the availability of a jury trial in a private action [under § 504 of the Rehabilitation Act]...." *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 828 (4th Cir.1994).[6] Because Congress provided no express right to a trial by jury for claims brought under § 504 of the Rehabilitation Act, this Court concludes that Miller has no such right in his claim that he was discriminated against by the Postal Service. *See Crawford v. Runyon*, 79 F.3d 743, 744 (8th Cir.1996) (affirming district court's decision that plaintiff did not have a right to a jury trial in his suit under § 504 of the Rehabilitation Act against the Postmaster General acting in his official capacity because Congress had not affirmatively and unambiguously granted that right by statute). Therefore, Defendant's Motion to Strike Plaintiff's Jury Demand is GRANTED with respect to all of Plaintiff's remaining claims.

## IV. CONCLUSION

For the reasons stated above, the Court concludes that Miller properly exhausted his administrative remedies only with regard to the claims of discrimination based on sex, race, and disability and retaliation raised in his 1991 EEO Complaint. Therefore, Defendant's Motion for Summary Judgment with regard to Miller's claims based on his 1991 EEO Complaint is DENIED. In addition, to the extent that Miller's Complaint before this Court raises hostile work environment claims based on alleged harassment due to his disability, Defendant's Motion for Summary Judgment with regard to such hostile work environment claims is GRANTED because Miller failed to allege facts to support a hostile work environment claim in his 1991 EEO Complaint. In addition, the Court concludes that Miller failed to exhaust administrative remedies with regard to all charges of discrimination and retaliation raised in his 1995 EEO Complaint, and that those charges were not revived by either equitable estoppel or the continuing violation theory, nor are they like and related to the claims raised in Miller's 1991 EEO Complaint. Therefore, Defendant's Motion for Summary Judgment with regard to claims raised in Miller's 1995 EEO Complaint is also GRANTED.

In addition, for the reasons stated above, the Defendant's Motion to Strike Plaintiff's Demand for a Jury Trial with regard to all remaining claims is GRANTED.

Finally, this matter is referred to the Magistrate Judge for entry of an appropriate scheduling order establishing a time frame for any discovery period, if necessary, and for filing pleadings which may be warranted in the discretion of the Magistrate Judge.

An Order in accord with this Memorandum Opinion will be filed contemporaneously herewith.

---

6. In *Pandazides,* the court found that the Seventh Amendment of the Constitution required that a plaintiff bringing a claim under § 504 of the Rehabilitation Act against a private party have a right to trial by jury in certain cases. *Pandazides,* 13 F.3d at 832. However, as noted above, the Seventh Amendment right to trial by jury does not apply to suits against the federal government; therefore, *Pandazides* is distinguishable from this case.